**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kayla Melton, et al., | No. CV-21-00134-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Maricopa County, et al., | |
| Defendants. | |

In May 2019, Pedro Colazo-Villa ("the Decedent") was fatally shot by deputies of the Maricopa County Sheriff's Office ("MCSO"). In this action, the Decedent's wife, Kayla Melton, brings an action on behalf of the Decedent's children (collectively, "Plaintiffs"). Now pending before the Court is a Rule 12(b)(6) motion to dismiss filed by the two remaining defendants, the MCSO and Maricopa County ("the County") (collectively, "Defendants"). For the following reasons, Defendants' motion is granted.

**BACKGROUND**

I.  Factual Background

The following facts, which are assumed true for purposes of Defendants' motion, are derived from the operative complaint, Plaintiffs' Fifth Amended Complaint ("FAC"). (Doc. 15.)

On May 6, 2019, several MCSO deputies ("the Deputies") responded to a 911 call in which the caller claimed that the Decedent was threatening to "burn down" a house located in Mesa, Arizona. (*Id.* ¶ 17.) The Deputies were also informed that the Decedent

"was making suicidal statements which indicated that he wanted the police to kill him" and that the Decedent had previously attempted to commit suicide. (*Id.* ¶¶ 20, 22, internal quotation marks omitted.) Additionally, the Deputies knew that the Decedent had, during a previous incident involving the MCSO in November 2018, "signaled his intent to commit 'suicide by cop.'" (*Id.* ¶ 18.)

"When the [Deputies] arrived at the scene there were Mesa Police Department officers who notified the [Deputies] that they had non-lethal weapons which could be utilized. The Mesa Police Department officers requested directions from the [Deputies] but never received any directions for assistance." (*Id.* ¶ 23.) Instead, and even though the Decedent "posed no immediate threat of harm," the Deputies "fired their weapons" at the Decedent. (*Id.* ¶ 24.) At the time, the Decedent "was not pointing his weapon at anyone, he did not have his finger on the trigger, nor was he holding the gun in a manner that a threat was posed, and . . . posed no threat of escape or of harm to anyone." (*Id.*)

The Decedent survived the initial shooting but was "completely incapacitated." (*Id.* ¶¶ 26, 27.) Nevertheless, "[i]nstead of attempting to provide assistance and care," the "Deputies continued to wait in their defensive positions." (*Id.* ¶ 26.) And when the Decedent "attempt[ed] to raise his hand and arm," the Deputies again "fired their weapons toward [the Decedent] and those shots proved ultimately fatal." (*Id.* ¶ 27.) "It took several more minutes before any of the . . . Deputies approached [the Decedent] after he was shot for the second time and this additional time prevented [the Decedent] from receiving any medical attention that could have potentially saved his life." (*Id.*)

II.     Relevant Procedural History

On May 5, 2020, Plaintiffs initiated this action by filing a complaint in Maricopa County Superior Court. (Doc. 1-2 at 26-34.)

On January 25, 2021, the County removed the Plaintiffs' then-operative pleading—by that point, the Third Amended Complaint—to this Court. (Doc. 1.) At that time, the only named, non-fictitious defendants were the County and the MCSO (and the MCSO hadn't yet been served). (*Id.* ¶¶ 3-4.)

On February 16, 2021, with Defendants' consent, Plaintiffs filed a Fourth Amended Complaint. (Docs. 4, 6.) Among other things, the Fourth Amended Complaint named, as additional defendants, two individual MCSO deputies and Maricopa County Sheriff Paul Penzone. (Doc. 8 at 5 [redlined changes].)

On April 1, 2021, with Defendants' consent, Plaintiffs filed the FAC. (Docs. 11, 15.) Among other things, the FAC named, as additional defendants, a third individual MCSO deputy, that deputy's spouse, and the spouses of some of the individual defendants who had been named in the Fourth Amended Complaint. (Doc. 16 at 4.)

On April 15, 2021, Defendants filed the pending motion to dismiss. (Doc. 17.) The motion thereafter become fully briefed (Docs. 19, 21) and neither side requested oral argument.

On July 26, 2021, all of the individual defendants (and spousal defendants) who had been named for the first time in the Fourth Amended Complaint and/or in the FAC were dismissed due to a lack of service. (Doc. 22.) Thus, the County and the MCSO are, once again, the sole defendants in this action.

**DISCUSSION**

I.      Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (internal quotation marks omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015)

(internal quotation marks omitted).

II. Analysis

In the FAC, Plaintiffs assert five claims. Count One is a claim entitled "Wrongful Death." (Doc. 15 ¶¶ 30-53.) Count Two is a claim entitled "42 U.S.C. § 1983 Violation of Due Process Rights and Fourth Amendment Rights." (*Id.* ¶¶ 54-73.) Count Three is a claim entitled "42 U.S.C. § 1983 Violation of Fourteenth Amendment Rights." (*Id.* ¶¶ 74-88.) Count Four is a claim entitled "42 U.S.C. § 1983 Violation of Substantive Due Process Rights." (*Id.* ¶¶ 89-106.) Count Five is a claim entitled "42 U.S.C. § 1983 Unconstitutional Policies, Customs, and Failure to Train." (*Id.* ¶¶ 100-05.)[1]

In their motion to dismiss, Defendants challenge the validity of all of these claims on an array of grounds. (Doc. 17.) The Court finds it unnecessary to reach all of Defendants' proffered grounds for seeking dismissal because the two grounds discussed below are straightforward and dispositive.

A. **The MCSO**

As noted, there are only two remaining defendants in this action, the MCSO and the County. Defendants contend that the MCSO is an improper defendant because it is a non-jural entity incapable of suing and being sued. (Doc. 17 at 1, 5-6.) In response, Plaintiffs concede this point. (Doc. 19 at 4 [acknowledging that Ninth Circuit law "does hold that the Sherriff's [sic] Office is a non-jural entity and therefore not subject to suit" and that it therefore "appears the Sherriff's [sic] Office should be dismissed"].) Accordingly, the MSCO must be dismissed.[2]

---

[1] The paragraphs in the FAC are not consecutively numbered, such that paragraph 106 (at Doc. 15, page 13) is followed by paragraph 100.

[2] Even if Plaintiffs hadn't conceded the point, dismissal of the MCSO would be required. *See, e.g., Braillard v. Maricopa County*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010) ("MCSO is a nonjural entity and should be dismissed from this case."); *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015) ("After *Braillard*, it is now clear that MCSO has improperly been named as a party in this action."). Furthermore, to the extent Plaintiffs contend that the FAC's references to the "MCSO" were intended to collectively refer to the MCSO, the County, and Sheriff Penzone (Doc. 19 at 4-5, citing Doc. 15 ¶ 6), this clarification does not change the dismissal analysis—everybody agrees that the MCSO itself is subject to dismissal, Sheriff Penzone has been separately dismissed for failure to serve (Doc. 22), and the insufficiency of the claims against the County is discussed *infra*. Finally, even if Sheriff Penzone hadn't been dismissed for failure to serve, the supervisory

B.  **The County**

1.  Federal Claims

This leaves one remaining defendant, the County. Although the parties spill much ink debating the precise nature of the § 1983 claims and theories of liability set forth in the five counts of the FAC, the only way Plaintiffs could prevail on a § 1983 claim against the County—as opposed to any of the individual defendants who have since been dismissed—is by establishing that the alleged constitutional violation, whatever its nature, arose from the County's execution or implementation of an unconstitutional "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or "governmental custom." *Monell v. Dep't of Soc. Servs of N.Y.*, 436 U.S. 658, 690-91 (1978). This is because "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. *See generally Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. In order to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.") (alterations in original) (citations and internal quotation marks omitted).

The FAC contains several paragraphs whose apparent purpose is to support a *Monell* claim against the County. The relevant paragraphs are set forth below:

▪ Paragraph 7 alleges that "[t]he actions of Defendants constitute the actions of MCSO, [which] is liable under Section 1983 because the unreasonable use of deadly force is the result of official policy by MCSO including a failure to properly train agents in

liability claims against him would fail for the same reasons as the claims against the County.

officers on the proper use of deadly force and on the handling of 'suicide by cop' situations such as the one set forth herein that led to the wrongful killing of the deceased."

▪ Paragraph 28 alleges that "[u]pon information and belief, the wrongful death of [the Decedent] was caused by MCSO's utter failure to properly train its agents in the use of deadly force and even more specifically in the handling of suicide-by-cop situations leading to shooting deaths of not only [the Decedent] but others as well.  MCSO knowingly puts Maricopa County residents at risk of wrongful shooting by deliberate failures in the training of its agents."

▪ Paragraph 31 alleges that "Defendants' enactment and use of a municipal/county policy, custom, decision, ordinance, regulation, or practice caused the death of [the Decedent]."

▪ Paragraphs 37-41, 65-69, and 98-102 each allege (in identical language) that "Defendants enacted a municipal/county custom, policy, decision, ordinance, regulation, or practice to respond to individuals such as Decedent with deadly force instead of preserving the individual's life through alternative means of de-escalation.  This custom, policy, decision, ordinance, regulation, or practice is deficient because it leads to the unnecessary deaths of individuals attempting 'suicide by cop' or who do not pose a threat necessitating lethal force.  This custom, policy, decision, ordinance, regulation, or practice caused the deprivation of Plaintiffs' federally protected Constitutional rights because it caused Decedent's death.  At all relevant times, Defendants were acting pursuant to a municipal/county custom, policy, decision, ordinance, regulation, or practice in their interactions with Decedent.  Defendants' actions in following this municipal/county custom, policy, decision, ordinance, regulation, or practice were done with willful indifference, intentionally, maliciously, in bad faith, and in reckless disregard of Plaintiffs' federally protected Constitutional rights."

▪ Paragraph 85 alleges that "[a]t all relevant times, Defendants were acting pursuant to a municipal/county custom, policy, decision, ordinance, regulation, or practice in their interactions with Decedent."

▪ Paragraph 104 (the second) alleges that "[t]he death of the decedent in this matter was a direct result of MCSO's official policy and utter failure to train their deputies with regard to the proper use of deadly force."

Defendants challenge the sufficiency of these *Monell*-related allegations. (Doc. 17 at 7-10.) Defendants argue that the FAC "do[es] not identify with any modicum of specificity what policies are at issue" and that "the random use of the phrase 'policy and procedure' is not enough to morph [Plaintiffs'] vague allegations into a claim for relief." (*Id.* at 7-9.) Defendants also contrast the FAC in this case with pleadings that have been deemed sufficient to state a *Monell* claim in other cases, noting that the FAC does not (unlike those other pleadings) allege such facts as "the number of officer-involved shootings in a particular year," "departmental settlements in excessive force cases," "specific prior officer-involved shootings," or "a pattern of similar constitutional violations." (*Id.* at 9-10.) The bottom line, according to Defendants, is that although the FAC "haphazardly allege[s] in ¶40 that Defendants were acting pursuant to a custom or practice in their interactions with decedent," it "provide[s] no specificity . . . [and] fail[s] to identify any prior instances of personnel following the amorphous custom or practice that would have put a defendant on notice that similar past incidents were caused by the lack of an appropriate policy." (*Id.* at 10.)

In response to Defendants' arguments on this point, Plaintiffs notably do not argue that the FAC contains specific, non-conclusory allegations of a custom, practice, policy, or pattern of incidents. (Doc. 19 at 6-7.) Instead, Plaintiffs contend that it is legally unnecessary to include such details at the pleading stage and that "a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice" is sufficient. (*Id.*, internal quotation marks omitted.) In support of this argument, Plaintiffs cite pre-*Iqbal* and -*Twombly* cases decided in the 1990s. (*Id.*)

In reply, Defendants accuse Plaintiffs of "relying on outdated caselaw" and contend that the "correct pleading standard," established by *Iqbal* and *Twombly*, requires more. (Doc. 21 at 5-6.)

Defendants have the better side of this argument. Put simply, it is not enough for a plaintiff asserting a *Monell* claim to rely on conclusory, formulaic allegations that the constitutional violation arose from a custom, policy, practice, or pattern of incidents. Instead, the plaintiff must provide specific factual allegations in support of the claim. *See, e.g.*, *Capp v. County of San Diego*, 940 F.3d 1046, 1061 (9th Cir. 2019) ("[E]ven if Plaintiffs had pleaded a plausible Fourth Amendment claim, the FAC ascribes Defendants' alleged misconduct to official policy in a conclusory fashion that is insufficient to state a viable claim."); *Dougherty*, 654 F.3d at 900-01 ("Dougherty's *Monell* and supervisory liability claims lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*. Regarding the *Monell* claim, Dougherty alleged only that (1) 'Defendant CITY's policies and/or customs caused the specific violations of Plaintiff's constitutional rights at issue in this case[]' and (2) 'Defendant CITY's polices and/or customs were the moving force and/or affirmative link behind the violation of the Plaintiff's constitutional rights and injury, damage and/or harm caused thereby.' The Complaint lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation.") (alteration in original) (citation omitted). Here, Plaintiffs do not even attempt to defend the sufficiency of the FAC under these standards. At any rate, the Court has independently reviewed the *Monell*-related factual allegations in the FAC and easily concludes that they are deficient. There are no facts, just conclusions.

        2.       <u>State-Law Claims</u>

Finally, Defendants also assert that, to the extent the FAC contains any state-law claims against the County (separate from the federal claims under 42 U.S.C. § 1983), those claims are subject to dismissal under *Ryan v. Napier*, 425 P.3d 230 (Ariz. 2018). (Doc. 17 at 6 n.1; Doc. 21 at 3.) In response, Plaintiffs seem to clarify that they are only asserting § 1983 claims. For example, in their discussion of their standing to bring suit, Plaintiffs

argue that the "case law in the Ninth Circuit is clear that the family of a deceased *has a 1983 cause of action* for their own loss suffered at the hands of the government's wrongful killing" and only invoke state law for the limited purpose of establishing their standing to assert a § 1983 claim: "Plaintiffs, as proper wrongful death beneficiaries under A.R.S. § 12-611, *may properly bring their claims under 1983* for the wrongful death of their father, son and spouse." (Doc. 19 at 2-3, emphases added and footnote omitted; *see also id.* at 5 ["Plaintiffs can be compensated for their loss thanks to the Fourth Amendment, Section 1983 and Arizona's wrongful death statute, which combined further goals of the United States Constitution and its remedial counterpart."].) At no point in their response do Plaintiffs state that they are asserting a state-law tort claim, such as a claim for negligence or battery, in addition to their § 1983 claims.

The Court's independent review of the FAC confirms that it contains only federal claims under § 1983. The titles of Counts Two, Three, Four, and Five each include the phrase "42 U.S.C. § 1983," so it seems clear that those claims are purely federal claims. As for Count One, although it is somewhat ambiguously entitled "Wrongful Death," its allegations are consistent with it being a § 1983 claim, not a state-law claim. Among other things, it alleges that "all of the police officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983"; that "all individual Defendants to this claim were acting under the color of state law in their capacity as officers of the Maricopa County Sheriff's Office"; that "[a]t the time of the shooting, Decedent had a clearly established right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force"; that "[a]t the time of the shooting, Plaintiffs had a clearly established right under the Constitution against the loss of their familial relationship with Decedent through the objectively unreasonable use of force"; that "[a]pprehension by deadly force is a seizure subject to the Fourth Amendment's reasonableness requirements"; that "[a]t the time of the shooting, Plaintiffs had a clearly established right under the Constitution to substantive due process against the loss of their familial relationship with Decedent pursuant to the Fourth and Fourteenth Amendments of the United States Constitution"; and

that "[t]he Defendants' actions and use of force . . . were objectively unreasonable in light of the facts and circumstances and were a violation of Plaintiffs' substantive due process rights." (Doc. 15 ¶¶ 32-35, 45-48.) Additionally, and as quoted at length above, paragraphs 37-41 offer lengthy (if conclusory) allegations intended to establish a claim for *Monell* liability against the County. Such allegations bear all the hallmarks of a § 1983 claim, not a state-law claim. Thus, Defendants' belt-and-suspenders effort to dismiss any state-law claims is unnecessary.

Alternatively, even assuming that Count One could be categorized as a hybrid federal and state-law claim, the state-law portion would subject to dismissal. In their motion, Defendants specifically argue that any state-law claim is barred by *Ryan* (Doc. 17 at 6 n.1) and Plaintiffs fail to offer any response. Thus, Plaintiffs have forfeited any defense of any state-law claim. *Scott v. City of Phoenix*, 2011 WL 3159166, *10 (D. Ariz. 2011) ("Scott does not respond to this argument, and by failing to do so, Scott is deemed to have waived the issue."); *Reyes v. Wells Fargo Bank*, 2017 WL 11568871, *4 (C.D. Cal. 2017) (collecting cases); *Hurry v. Fin. Indus. Regul. Auth., Inc.*, 782 F. App'x 600, 602 (9th Cir. 2019) ("[F]ailure to respond to that argument constitutes waiver.").[3]

C. **Leave To Amend**

Defendants argue in their motion that "[f]urther leave to amend should be denied" because "Plaintiffs continue to repeat the same pleading errors in their successive attempts to craft a proper complaint despite specific orders of the Superior Court and the parties' meet-and-confer efforts." (Doc. 17 at 16.) In response, Plaintiffs do not address this point and do not request leave to amend in the event of dismissal—instead, they simply attempt to defend the sufficiency of the FAC. The Court construes this silence as an acknowledgement that leave to amend should be denied in the event of dismissal. *Scott*, 2011 WL 3159166 at *10; *Reyes,* 2017 WL 11568871 at *4; *Hurry,* 782 F. App'x at 602.

At any rate, the Court would deny leave to amend even if Plaintiffs had requested

---

[3] Moreover, even if Count One could somehow be construed as containing a state-law claim, and even if that claim could somehow survive dismissal under Rule 12(b)(6), the Court would decline to exercise supplemental jurisdiction over it now that all federal claims have been dismissed.

- 10 -

it. This case has been pending for more than 14 months and Plaintiffs have already amended their complaint five times. *Ascon Props., Inc. v. Mobil Oil. Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Additionally, Plaintiffs have long had access to MCSO policies, and even cited them in response to an earlier motion to dismiss during the state-court proceedings (Doc. 1-2 at 108, 126), so their continued inability to identify any specific policies that purportedly caused a violation of Decedent's (and/or Plaintiffs') constitutional rights suggests that further leave to amend as to *Monell* liability would be futile.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 17) is **granted.**

**IT IS FURTHER ORDERED** that the Clerk enter judgment accordingly and terminate this action.

Dated this 30th day of July, 2021.

Dominic W. Lanza
United States District Judge